Benjamin W. Reeves (#025708)
Reid Edwards (#038435)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: breeves@swlaw.com
        redwards@swlaw.com

*Attorneys for Plaintiff Wells Fargo Bank, N.A.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank, N.A., <br><br> Plaintiff, <br><br> v. <br><br> Prime1 Construction, LLC, an Arizona limited liability company; Phillip Aguilar; and Ankur R. Shah and Ruchi A. Jain, solely in their capacity as trustees of The Ankur & Ruchi Shah Family Trust, <br><br> Defendants. | No. <br><br> **COMPLAINT** |

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), by and through undersigned counsel, brings the following complaint against Prime1 Construction LLC ("Prime1"), Phillip Aguilar ("Mr. Aguilar"), and Ankur R. Shah ("Mr. Shah") and Ruchi A. Jain ("Ms. Jain"), solely in their capacity as trustees of The Ankur & Ruchi Shah Family Trust ("the Trust"), (collectively, "Defendants") and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Wells Fargo is a citizen of South Dakota. Wells Fargo is a national bank organized under the National Bank Act. For diversity jurisdiction purposes, a national

bank is a citizen of the state designated as its main office on its articles of association. *See* 28 U.S.C. §§ 1332(a), 1348 (national banking association deemed citizen of State in which located); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). Wells Fargo's designated main office is in South Dakota. *Rouse v. Wachovia Mortgage*, F.S.B., 747 F.3d 707, 715 (9th Cir. 2014) ("Wells Fargo is a citizen only of South Dakota, where its main office is located.").

2.      Upon information and belief, Prime1 is, and at all times relevant herein was, a limited liability company organized and existing under the laws of the State of Texas, with its principal offices in Scottsdale, Arizona.

3.      Upon information and belief, Aguilar is the owner of Prime1 with control of Prime1.

4.      Upon information and belief, Mr. Aguilar is, and at all times relevant herein, a resident of Scottsdale, Arizona.

5.      Upon information and belief, Prime1 is, and at all times relevant herein, a citizen of Arizona. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens.").

6.      Upon information and belief, the Trust is, and at all times relevant herein was, formed under the laws of the State of California.

7.      Upon information and belief, Mr. Shah and Ms. Jain are trustees (the "Trustees") of the Trust and are, and at all times relevant herein were, residents of Arizona.

8.      Upon information and belief, the Trust is, and at all times relevant herein was, a citizen of Arizona. *See Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1227 (9th Cir. 2019) ("[A] trust has the citizenship of its trustee or trustees.").

9.      This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

10.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Defendants are residents of the State of Arizona, and Defendants each agreed in their respective Deposit Account Agreement ("Account Agreement") that any lawsuit or claim arising from their account or their Account Agreement would take place exclusively in the state or federal courts in the state whose laws govern their account, which is Arizona. *See* Ex. 1 at 38. A true and correct copy of the applicable Account Agreement is attached hereto as **Exhibit 1**.

## BACKGROUND AND GENERAL ALLEGATIONS

11.    On or about August 1, 2016, the Trust opened a Wells Fargo Everyday Checking account ending in 0474 (the "Trust Account").

12.    On or around November 10, 2022, Prime1 opened an Initiate Business Checking account with Wells Fargo, account ending in 4053 (the "Prime1 Account").

13.    When the Trust and Prime1 each opened their accounts, both parties agreed to be bound by the terms and conditions set forth in their respective Account Agreement. *See* Ex. 1 at 2. Both the Trust Account and Prime1 Account are governed by the identical Account Agreement.

14.    The Account Agreements are contracts between Wells Fargo and the account holder—here, both the Trust and Prime1. *Id.*

15.    The Account Agreements contain all the material terms and conditions regarding the use of the Trust Account and Prime1 Account. *Id.*

16.    Both Account Agreements provide that the Account Agreement and a holder's account — here, the Trust Account and Prime1 account — "are governed by the United States laws and . . . the laws of the state where [the] account is located." *Id.* at 38. Pursuant to the terms of the Account Agreement, an account is located at the branch where the account was opened. *Id.*

17.    The Trust opened the Trust Account at a Wells Fargo branch located in Chandler, Arizona, and therefore, Arizona law governs the Trustees' Account Agreement and the Trust Account.

18.    Similarly, Prime1 opened the Prime1 Account at a Wells Fargo branch located in Scottsdale, Arizona, and therefore, Arizona law governs Prime1's Account Agreement and the Prime1 Account.

19.    The actions of the Trust and Prime1 detailed below have resulted in the loss of over $100,000 to Wells Fargo. Wells Fargo contends that the Trust is primarily responsible for the losses incurred due to the Trust's fraudulently filed fraud claim. However, if the Trust is not deemed responsible, then Wells Fargo alternatively seeks to hold Prime1 liable for the amount that the Prime1 Account is overdrawn.

**The Trust Files a Fraudulent Chargeback Claim**

20.    On or about February 8, 2024, Mr. Shah, on behalf of the Trust, entered into a contract with Prime1 (the "Construction Contract") in which Prime1 agreed to complete certain construction work consisting of, among other things, front and backyard landscaping, interior home renovations, and the installation of a pool (hereafter, the "Project") in exchange for $250,000. A true and correct copy of the Construction Contract is attached hereto as **Exhibit 2**.

21.    Pursuant to the terms of the Construction Contract, Mr. Shah was to make a fifty percent down payment of the total Construction Contract price of $250,000 before Prime1 began its work on the Project. *See* Ex. 2 at 1.

22.    To make this down payment, Mr. Shah wrote a check, dated February 12, 2024, for $125,000 payable from the Trust Account to Prime1 (the "Check").

23.    Text messages between Mr. Shah and Mr. Aguilar indicate that Mr. Aguilar picked up the Check from Mr. Shah sometime on or before February 8, 2024. *See* Ex. 3 at 1. A true and correct copy of the text messages between the Mr. Shah, Mr. Aguilar, and Ms. Jain are attached hereto as **Exhibit 3**.

24.    Sometime after picking up the Check, Mr. Aguilar messaged Mr. Shah, stating that as soon as Prime1 can cash the Check, they can "get to work" on the Project. *See id.* at 2.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

25.     Initially, Mr. Shah told Mr. Aguilar that he dated the Check for February 12, 2024, to ensure that the necessary "funds" made it to the Trust Account, and that Mr. Aguilar could cash the Check "Monday" (*i.e.*, February 12, 2024) and begin work on the Project at that time. *See id.* 1–2.

26.     However, only hours after thanking Mr. Aguilar for picking up the Check, Mr. Shah messaged Mr. Aguilar on February 8, 2024, stating that the "[f]unds have settled," and asking Mr. Aguilar if he "want[ed] to just grab a new check dated today," so that Prime1 could immediately begin work on the Project. *See id.* at 2.

27.     To avoid the hassle of having to return to Mr. Shah's residence, Mr. Aguilar messaged Mr. Shah, stating that he simply changed the date on the Check from February 12, 2024, to February 9, 2024, and deposited the Check into the Prime1 account. *See id.* at 5.

28.     Instead of raising any complaints of fraud, Mr. Shah ratified Mr. Aguilar's date change of the Check by "liking" Mr. Aguilar's text message and providing Mr. Aguilar with his door code so that Prime1 could immediately begin work on the Project. *See id.* at 6.

29.     In the days following Mr. Shah's ratification of Mr. Aguilar's alteration and deposit of the Check, Mr. Shah and Ms. Jain learned of certain facts that called into question the trustworthiness of Mr. Aguilar and Prime1 and whether Prime1 would complete the Project as agreed.

30.     Rather than handle these concerns with Mr. Aguilar and Prime1, as Mr. Shah should have, Mr. Shah filed a fraud claim with Wells Fargo, claiming that the Check was fraudulently altered and that he had not authorized Prime1 to deposit the Check.

31.     Without knowledge of the text exchange between Mr. Shah and Mr. Aguilar ratifying the alteration of the Check, Wells Fargo believed Mr. Shah's fraud claim was valid and reversed the $125,000 charge made to the Trust Account.

32.     After issuing demand for payment to all Defendants, Wells Fargo received additional evidence regarding Mr. Shah's fraudulent check claim and Prime1's overdraft

of the Prime1 Account. Wells Fargo learned that Mr. Shah had ratified Mr. Aguilar's alteration and deposit of the Check, but subsequently filed the fraud claim related to the Check due to a contract dispute with Mr. Aguilar and Prime1.

33.    As a result of Mr. Shah's fraudulently filed **fraud** claim, Wells Fargo has lost the $125,000 amount that was returned to the Trust Account.

### The Prime1 Account is Depleted in Breach of the Account Agreement

34.    On February 9, 2024, Prime1 deposited the Check into the Prime1 Account.

35.    In the days following Prime1's deposit of the Check, Prime1 depleted those funds through various online transfers.

36.    On or about February 13, 2024, Mr. Shah filed his fraudulent fraud claim with Wells Fargo, resulting in a reversal of the Check and an overdraft on the Prime1 Account in the amount of $111,338.43.[1]

37.    Under the terms of Prime1's Account Agreement, "[i]f your account has an overdraft, you must promptly add money to return your account to a positive balance." *See* Ex. 1 at 12.

38.    Prime1's Account Agreement also provides that "[w]hen funds are deposited or credited into an account with an overdraft, you authorize [Wells Fargo] to apply those funds to the overdraft and related fee(s) in the account." *Id.*

39.    Prime1 acknowledged that if the Prime1 Account becomes overdrawn, Wells Fargo may "initiate collection efforts" and Prime1 agreed to reimburse Wells Fargo for the costs and expenses, including attorneys' fees, it incurs to do so. *Id.*

40.    After Prime1's overdrew  the Prime1 Account, Prime1 made deposits to the Prime1 Account, for a total outstanding balance of  $106,338.43.

41.    Unless the Trust is found responsible for Wells Fargo's losses, Prime1 is liable to Wells Fargo for the entire overdraft amount pursuant to the terms of Prime1's Account Agreement.

---

[1] At the time the Check was reversed, there were some funds within the Prime1 Account, which accounts for the discrepancy between the Check and overdraft amounts.

**Wells Fargo Has Suffered a Loss in Excess of $100,000**

42.     Due to Mr. Shah's fraudulently filed chargeback claim, and Prime1's depletion of the funds within the Prime1 Account, Wells Fargo has suffered a loss in excess of $100,000.

43.     Wells Fargo has contacted both the Trustees and Prime1 to resolve the issues regarding Mr. Shah's fraud claim and Prime1's overdraft to recover the over $100,000 in losses that Wells Fargo has incurred.

44.     Despite Wells Fargo's good faith efforts to resolve these issues, the Trustees and Prime1 each contend that they are not responsible for Wells Fargo's losses.

45.     Wells Fargo therefore brings this present lawsuit to hold the Trust liable for the $125,000 amount that was erroneously returned to the Trust Account due to Mr. Shah's fraudulently filed chargeback claim.

46.     Alternatively and/or in addition to, Wells Fargo seeks to hold Prime1 and Mr. Aguilar jointly and severally liable for the $106,338.43 in losses Wells Fargo has incurred due to Prime1's overdraft of the Prime1 Account.

## COUNT ONE

### (Breach of Contract – Against the Trust)

47.     Wells Fargo incorporates the allegations in the paragraphs above as if set forth fully herein.

48.     The Trustees' Account Agreement is a valid and binding contract between Wells Fargo and the Trust.

49.     Wells Fargo complied with all of its obligations under the Trustees' Account Agreement.

50.     Pursuant to the Trustee's Account Agreement, the Trustees were required to act truthfully with Wells Fargo and refrain from using the Trust account for any "illegal purpose." *See* Ex. 1 at 25.

51.     The Trustees also agreed to indemnify Wells Fargo "from all claims, demands, losses, liabilities, judgments, and expenses (including attorneys' fees and

expenses arising out of or in any way connected" with Wells Fargo's performance under the Account Agreement. *Id.* at 39.

52. The Trustees breached their Account Agreement by, among other things, filing a false chargeback claim with Wells Fargo.

53. As a direct and proximate result of the Trustees' breach, Wells Fargo has been damaged in an amount to be proven at trial, but no less than $125,000, plus statutory interest and reasonably foreseeable consequential damages.

54. Wells Fargo is also entitled to recover attorneys' fees, costs, and expenses, pursuant to the Trustees' Account Agreement and Arizona law. *See id.* at 12; A.R.S. §§ 12-341, 12-341.01.

## COUNT TWO

**(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against the Trust)**

55. Wells Fargo incorporates the allegations in the paragraphs above as if set forth fully herein.

56. The Trustees' Account Agreement is valid and binding contract between Wells Fargo and the Trust.

57. Wells Fargo complied with all of its obligations under the Trustees' Account Agreement.

58. A duty of good faith and fair dealing is implied in all contracts.

59. The Trustees breached the duty of good faith and fair dealing by, among other things, filing a false chargeback claim with Wells Fargo.

60. Wells Fargo has been damaged in an amount to be proven at trial, but no less than $125,000, plus statutory interest and reasonably foreseeable consequential damages.

61. Wells Fargo is also entitled to recover attorneys' fees, costs, and expenses, pursuant to the Trustees' Account Agreement and Arizona law. *See* Ex. 1 at 12; A.R.S. §§ 12-341, 12-341.01.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

## COUNT THREE

### (Fraud – Against the Trust)

62.     Wells Fargo incorporates the allegations in the paragraphs above as if set forth fully herein.

63.     The Trustees made representations to Wells Fargo on behalf of the Trust regarding the validity of the Check and whether Prime1 was authorized to deposit the Check.

64.     Those representations were false.

65.     Wells Fargo had no knowledge of the falsity of the representations at the time they were made.

66.     The representations were material.

67.     The Trustees on behalf of the Trust intended that Wells Fargo would rely on their misrepresentations.

68.     Wells Fargo reasonably relied on the Trustees' misrepresentations made on behalf of the Trust, reversing the charge of $125,000 and returning that amount to the Trust Account.

69.     The Trustees' misrepresentations made on behalf of the Trust have caused Wells Fargo damages in an amount to be proven at trial, but in no amount less than the $125,000 returned to the Trust Account on the basis of the Trustees' misrepresentations.

70.     Wells Fargo is also entitled to recover attorneys' fees, costs, and expenses, pursuant to the Trustees' Account Agreement and Arizona Law. *See* Ex. 1 at 12; A.R.S. §§ 12-341, 12-341.01.

## COUNT FOUR

### (Breach of Contract – Against Prime1)

71.     Wells Fargo incorporates the allegations in the paragraphs above as if set forth fully herein.

72.     The Federal Rules of Civil Procedure recognize that plaintiffs can bring claims for relief in the alternative. *See* Fed. R. Civ. P. 8(a)(3).  As an alternative to Count

One, Two and Three, Wells Fargo asserts this breach of contract claim.

73.    Prime1's Account Agreement is a valid and binding contract between Wells Fargo and Prime1.

74.    Wells Fargo complied with all of its obligations under Prime1's Account Agreement.

75.    Pursuant to Prime1's Account Agreement, Prime1 is required to maintain a positive balance in the Prime1 Account.

76.    Prime1 breached its Account Agreement by failing to bring the Prime1 Account to a positive balance after the Prime1 Account was overdrawn.

77.    As a direct and proximate result of Prime1's breach, Wells Fargo has been damaged in an amount to be proven at trial, but no less than the amount the Prime1 Account is overdrawn in principal, plus statutory interest and reasonably foreseeable consequential damages.

78.    Wells Fargo is also entitled to recover attorneys' fees, costs, and expenses, pursuant to Prime1's Account Agreement and Arizona Law. *See* Ex. 1 at 12; A.R.S. §§ 12-341, 12-341.01.

## **COUNT FIVE**

### **(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against Prime1)**

79.    Wells Fargo incorporates the allegations in the paragraphs above as if set forth fully herein.

80.    The Federal Rules of Civil Procedure recognize that plaintiffs can bring claims for relief in the alternative.  *See* Fed. R. Civ. P. 8(a)(3).  As an alternative to Count One, Two and Three, Wells Fargo asserts this breach of the implied covenant of good faith and fair dealing claim.

81.    Prime1's Account Agreement is a valid and binding contract between Wells Fargo and Prime1.

82.    Wells Fargo complied with all of its obligations under Prime1's Account Agreement.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

83.     A duty of good faith and fair dealing is implied in all contracts.

84.     Prime1 has breached the duty of good faith and fair dealing by, among other things, failing to maintain a positive balance in the Prime1 Account.

85.     Wells Fargo has been damaged in an amount to be proven at trial, but no less than the amount the Pime1 Account is overdrawn in principal, plus statutory interest and reasonably foreseeable consequential damages.

86.     Wells Fargo is also entitled to recover attorneys' fees, costs, and expenses, pursuant to Prime1's Account Agreement and Arizona Law. *See* Ex. 1 at 12; A.R.S. §§ 12-341, 12-341.01.

## **COUNT SIX**

### **(Unjust Enrichment – Against Prime1 and Mr. Aguilar)**

87.     Wells Fargo incorporates the allegations in the paragraphs above as if set forth fully herein.

88.     The Federal Rules of Civil Procedure recognize that plaintiffs can bring claims for relief in the alternative. *See* Fed. R. Civ. P. 8(a)(3).  As alternative relief to Counts Two and Three, Wells Fargo brings this claim for unjust enrichment.

89.     Wells Fargo conferred benefits upon Prime1 and Mr. Aguilar, including, among other things, the overdrawn amount of the Prime1 Account.

90.     Prime1 and Mr. Aguilar accepted and retained the benefits conferred by Wells Fargo.

91.     Prime1 and Mr. Aguilar have been unjustly enriched to the detriment of Wells Fargo by, among other things, failing to maintain a positive balance in the Prime1 Account.

92.     Prime1 and Mr. Aguilar have benefited from Wells Fargo's services, while refusing to honor their obligations in Prime1's Account Agreement.

93.     Given the circumstances, Prime1 and Mr. Aguilar's retention of the overdrawn amount from the Prime1 Account is unjust and inequitable. If Prime1 and Mr. Aguilar are not required to reimburse Wells Fargo, Prime1 and Mr. Aguilar will be

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

unjustly enriched, and Wells Fargo will be unjustly impoverished.

94.    Wells Fargo has been damaged in an amount to be proven at trial, but no less than the amount the Prime1 Account is overdrawn in principal, plus statutory interest and reasonably foreseeable consequential damages.

95.    Wells Fargo is also entitled to recover attorneys' fees, costs, and expenses, pursuant to Prime1's Account Agreement and Arizona Law. *See* Ex. 1 at 12; A.R.S. §§ 12-341, 12-341.01.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Wells Fargo Bank, N.A. respectfully requests that the Court enter judgment in its favor and against Defendants, jointly and severally, as follows:

A.    For an award of damages, including actual, contractual, compensatory, tort, incidental, indemnity, consequential, and/or restitutionary damages in an amount to be proven at trial, but in an amount no less than $125,000;

B.    For indemnity by the Trust for all losses and damages suffered by Wells Fargo as a result of the Trust's actions as alleged herein;

C.    For an award of Wells Fargo's reasonable attorneys' fees and costs incurred, pursuant to page 12 of the Trustees and Prime1 Account Agreements and pursuant to A.R.S. §§ 12-341, 12-341.01;

D.    For an award of prejudgment interest on the foregoing calculated from the earliest date at the maximum rate allowed by law;

E.    For an award of post-judgment interest on the foregoing at the maximum rate allowed by law from the date of entry of judgment until paid in full;

F.    For post-judgment collection attorneys' fees and costs; and

G.    For such other and further relief as the Court deems just and proper.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

1

2          DATED this 5th day of September, 2024.

3                                               SNELL & WILMER L.L.P.

4

5                                        By: *s/Reid Edwards*
                                            Benjamin W. Reeves (#025708)
6                                           Reid Edwards (#038435)
                                            One East Washington Street
7                                           Suite 2700
                                            Phoenix, Arizona 85004-2556
8                                           Attorneys for Plaintiff Wells Fargo
                                            Bank, N.A.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28