WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-24-02337-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Prime1 Construction LLC, et al., | |
| Defendants. | |

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") filed a Complaint against Prime1 Construction, LLC ("Prime1"); Phillip Aguilar; and Ankur R. Shah and Ruchi A. Jain (collectively, "The Shahs"), solely in their capacity as trustees of The Ankur & Ruchi Shah Family Trust ("The Trust") (Doc. 1). Along with the Second Amended Answer, the Shahs, individually and in their capacity as trustees of the Trust, filed a Third-Party Complaint against Masizo Development, LLC ("Masizo") (Doc. 46). Masizo has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  (Doc. 55).  The Court will partially grant Masizo's Motion.

I.   **Background**

  A.   **Wells Fargo's Complaint**

Wells Fargo is a citizen of South Dakota.  (Doc. 1 at ¶ 1).  Prime1, Aguilar, the Shahs, and the Trust are citizens of Arizona.  (Doc. 1 at ¶ 2–8).  The Shahs allege that

---

[1] Any references to "rules" herein are in reference to the Federal Rules of Civil Procedure, unless stated otherwise.

Masizo is a citizen of Arizona. (Doc. 46 at ¶5).

In the Complaint, Wells Fargo alleges that the Trust has an account with them, and that the Trust fraudulently made a fraud claim to have Wells Fargo reverse a charge. (Doc. 1). Specifically, Wells Fargo alleges that the Shahs filed a fraud claim alleging that the date on a check payable from the Trust account to Prime1 had been altered. (*Id.* at ¶¶ 27–30). However, they claim that the Shahs had in fact ratified the change of date in a text exchange with Aguilar, the owner of Prime1. (*Id.* at ¶ 28). They therefore allege that they lost the $125,000 that was returned to the Trust account because of the fraud claim. (*Id.* at ¶ 33). Due to these allegations, Wells Fargo brought three counts against the Trust and Prime1: (1) breach of contract against the Trust; (2) breach of the implied covenant of good faith and fair dealing against the Trust; (3) fraud against the Trust; (4) breach of contract against Prime1; (5) breach of the implied covenant of good faith and fair dealing against Prime1; and (6) fraud against Prime1. (*Id.* at ¶¶ 47–95).

**B.   The Shahs' Cross-Claims and Third-Party Complaint**

The Shahs then filed Cross-Claims against Prime1 and Aguilar, and a Third-Party Complaint ("TPC") against Masizo. (Doc. 46). There, they allege that they had been searching for a contractor for a home remodeling project. (*Id.* at ¶ 9). They found a designer who referred them to a contractor known as Jordan Rodriguez, allegedly a fake name used by Aguilar. (*Id.* at ¶ 11–14). The Shahs allege that Aguilar "deliberately induced" them to sign a fraudulent contract (the "Contract"), knowing that his company Prime1 was unlicensed. (*Id.* at ¶ 21). The check at issue in the Complaint was a down payment for the Contract. (*Id.* at ¶ 17).

The Contract was in the name of Prime1, but listed Masizo's Registrar of Contractors number. (Doc. 46-1 at 1). It also references Masizo's name multiple times as Prime1's partner. (*Id.* at 4–5). For example, it states: "This Contract Agreement (this "Agreement") between Homeowner (Home Owner") [sic] and, Masizo & partner Prime1 Construction, LLC." (*Id.* at 4). It frequently refers to Prime1 and Masizo collectively, such as by saying "Prime1 Construction, LLC/Masizo shall provide all labor and materials

and perform all work necessary" according to "specifications signed by both Owner and Masizo/Prime1 Construction, LLC." (*Id.*)

However, the Contract seems to indicate that Prime1 is unlicensed. (*Id.* (noting that "Prime1 Construction, LLC are not acting or offer in capacity of a license contractor [sic]" and "Prime1 Construction, LLC - non-license Project Management Company: shall company maintain general liability, workers compensation and builder's risk insurance [sic].")). It also states that Prime1 and Masizo are not responsible for any work performed. (*Id.* at 4–5)

The Shahs further allege that they "uncovered significant red flags indicative of deliberate fraud" on the part of Aguilar and Prime1. (Doc. 46 at ¶ 18). Noting the references to Masizo in the Contract, the Shahs allege that they contacted Masizo, and that an owner of Masizo told them that he knew Aguilar but was unaware of the Contract. (*Id.* at ¶¶ 30-31). Later that day, however, when Aguilar called him in front of the Shahs, the owner told them that he would be a consultant to Aguilar for the project. (*Id.*)

The Shahs then allege that Wells Fargo contacted them about the check, and they directed Wells Fargo to dishonor it. (*Id.* at ¶¶ 23–24). According to the Shahs, Wells Fargo initially dishonored the check, but later reversed it and credited Prime1's account, whereupon Aguilar withdrew the funds and "absconded" with them. (*Id.* at ¶¶ 27–29). Additionally, the Shahs claim that after the parties had agreed to terminate the Contract, Shah and Jain agreed to pay another $3,000 to remove a dumpster that Prime1 had delivered to their house. (*Id.* at ¶ 32). They claim that they were not legally obligated to pay that sum, but Aguilar had made a "contrary representation" to them. (*Id.* at ¶ 33).

The Shahs assert that if the Trust is found liable to Wells Fargo, then Prime1, Aguilar, and Masizo must be found liable to the Shahs. (*Id.* at ¶ 37). They claim that Prime1, Aguilar, and Masizo acted in a coordinated conspiracy to defraud them, using Masizo's license to present a veneer of legitimacy. (*Id.* at ¶ 38). The Shahs bring three Counts against Masizo: (1) breach of contract, (2) unjust enrichment, and (3) fraud. (*Id.*). Masizo seeks to dismiss the Third-Party Complaint for lack of subject matter jurisdiction

and for failure to state a claim. (Doc. 55).

## II. Legal Standard

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). The party asserting jurisdiction bears the burden of rebutting the presumption against subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must dismiss a plaintiff's complaint if it fails to establish subject matter jurisdiction. *Savage*, 343 F.3d at 1039 n.2.

Jurisdictional challenges can be either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack exists when a defendant asserts the complaint's jurisdictional allegations are insufficient on their face to demonstrate jurisdiction. *See Menza v. United States Dep't of the Treasury*, 1999 WL 550243, *1 (D. Or. 1999), *aff'd* 2000 WL 1029069 (9th Cir. 2000). Where the attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Under Rule 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The complaint requires a "short and plain statement of the claim showing that the pleader is entitled to relief" to ensure that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual content to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the factual allegations are sufficient for the court "to draw the reasonable inference that the defendant is liable." *Id.* When evaluating a Rule 12(b)(6) motion, the court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. *See Telesaurus VPC,*

*LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

**III.  Discussion**

Masizo argues that the TPC should be dismissed because (1) the Court lacks diversity jurisdiction; (2) it should not exercise supplemental jurisdiction; (3) the TPC does not involve the same case or controversy; (4) the Trust did not enter the Contract; (5) the TPC fails to allege unjust enrichment; and (6) the Trust is not a party to the Contract which is required to maintain a breach of fraud claim.  (Doc. 55 at 7–14).  The Court will address each argument in turn.

**A.  The Rule 12(b)(1) Motion**

**1.  Wells Fargo did not Join the Shahs in their Individual Capacity**

Masizo contends that Wells Fargo did not join the Shahs as a party *in their individual capacity*, so the TPC cannot be maintained.  (Doc. 55 at 7–8).

Arizona law governs the capacity of parties to sue or be sued.  Fed. R. Civ. P. 17(b). Generally, trusts lack the capacity to sue or be sued under Arizona law.[2] *Paul Johnson Drywall Inc. v. Sterling Grp. LP*, 2021 WL 3709851, at *2 (D. Ariz. Aug. 20, 2021); *see also Matter of Book*, 2019 WL 2394259, at *2 (Ariz. Ct. App. June 6, 2019), (unpublished) ("Generally, a common-law trust is not considered a legal entity capable of suing or being sued; therefore, any suit involving the trust must be brought by or against its trustee." (citations omitted)).  As such, the trustees, rather than the trust, are the real party in interest in litigation involving the trust.  *Irwin Union Collateral Inc. v. Peters & Burris, LLC*, 2009 WL 5184902, at *4 (D. Ariz. Dec. 22, 2009).  There is a distinction between naming a party as an individual or as a trustee.  *Mut. of Omaha Loanpro LLC v. Alta Mesa II, LLC*, 2011 WL 13122482, at *2 (D. Ariz. Feb. 28, 2011); *see also Matter of Book*, 2019 WL 2394259, at *2 ("[A] trustee may be sued in a representative capacity, as an individual, or both.").

Masizo relies on *Mut. of Omaha Loanpro LLC*, where the district court dismissed claims brought against defendant trusts.  There, the court found it insufficient that

---

[2] Common-law trusts cannot sue or be sued, but business trusts created under A.R.S. § 10-1871 may sue in their own name.  *McLeod v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 2189498, *3 (Ariz. Ct. App. May 18, 2017) (unpublished).  Both parties seem to accept that the Trust is a common-law trust.

- 5 -

individuals who "happen[ed] to be trustees" were also named as defendants, because they had not been named *as trustees*. *Mut. of Omaha Loanpro LLC*, 2011 WL 13122482, at *2 ("Plaintiff has sued the Trusts; it has not sued the trustees. It is not sufficient that plaintiff sued individuals who also happen to be trustees of the defendant trusts."). Therefore, naming a party in an individual capacity is not the equivalent of naming the party in its capacity as a trustee. *Id.* Since that is the case, it must also be true that naming a party in its capacity as a trustee does not also name the party as an individual. *See Mut. of Omaha Loanpro LLC*, 2011 WL 13122482, at *2; *Matter of Book*, 2019 WL 2394259, at *2.

Wells Fargo's Complaint names the Shahs "solely in their capacity as trustees" (Doc. 1), but the TPC lists the Shahs "individually *and* in their capacity as trustees" as Third-Party Plaintiffs (Doc. 46) (emphasis added). Masizo is correct. The Shahs in their individual capacities are not original defendants and they therefore cannot be Third-Party Plaintiffs. *See* Fed. R. Civ. P. 14(a) (detailing "When a Defending Party May Bring in a Third Party.").

The Shahs urge that, "[a]s a practical matter," they acted in their individual capacities, their capacities as trustees, or both throughout the facts of this case, and their interests always aligned with the Trust's. (Doc. 60 at 7). That may be so, but having the proper parties is not merely an issue of formality. The Shahs can only bring third-party claims as individuals if they are named as defendants in their individual capacities. Fed. R. Civ. P. 14(a). They are not. So, the claims of the Shahs as individuals must be dismissed. *Mut. of Omaha Loanpro LLC*, 2011 WL 13122482, at *2.

**2. The Assignment is Improper and does not Establish Subject Matter Jurisdiction for the Shahs as Individuals**

Next, the Shahs present an "Assignment Agreement," in which they purport to assign the Claims as individuals against Prime1, Aguilar, and Masizo to the Trust. (Doc. 60-1). Therein, the Shahs claim to convey "any and all of the Claims, without warranty" to the Trust for unspecified "good and valuable consideration." (*Id.*) The agreement is dated March 26, 2025, which is after Masizo's Motion was filed on February

25. (*Id.*)

Although the assignment involves assignment of claims of nonparties in a third-party action, the facts in this case are similar to those involving assignments to establish diversity jurisdiction. A party cannot create diversity jurisdiction through improper or collusive assignment. 28 U.S.C.A. § 1359. "Improper or collusive assignment" means an attempt to create jurisdiction by colorable assignment without substance. *Caribbean Mills, Inc. v. Kramer*, 392 F.2d 387, 393 (5th Cir. 1968), *aff'd Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823 (1969).

This case is analogous to *Syms v. Castleton Indus., Inc.*, 470 F.2d 1078 (5th Cir. 1972), another case involving assignment in a family trust. In *Syms*, a family trust with a mother and son as trustees invested money with the defendants. *Syms*, 470 F.2d at 1080. The defendants failed to pay federal income tax on profits for the investment. *Id.* The mother and all the trust members assigned their interest to the son, believing that doing so would create diversity jurisdiction. *Id.* at 1083. The court relied on the lack of consideration and the fact that the assignors retained an interest in the proceeds to find the assignment collusive and dismissed the case. *Id.*

Here, the assignment agreement provides that there was "good and valuable consideration" but does not specify what it was. (Doc. 60-1 at 1). As in *Syms*, the Shahs as individuals effectively retain an interest in the proceeds because they are also the trustees. And it is notable that the agreement was made *after* the Motion to Dismiss was filed. Viewed in the aggregate, these factors suggest that the Shahs chose to make the assignment to allow the Trust to bring in the impermissible Claims. *See Syms*, 470 F.2d at 1083.

In sum, the Court finds that the assignment of the Claims is improper and collusive and the Claims of the Shahs as individuals are dismissed. The only remaining Claims, then, are those of the Shahs as trustees.

/ / /

/ / /

### 3. 28 U.S.C. § 1367 does not Require Complete Diversity Between Third Party Plaintiffs and Third-Party Defendants

Plaintiff Wells Fargo filed suit in this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1 at ¶ 9). The Shahs filed the Third-Party Claim based on supplemental jurisdiction under 28 U.S.C. § 1367(a). (Doc. 46 at ¶ 6). Masizo contends that the TPC must be dismissed for lack of subject matter jurisdiction because the Shahs and Masizo lack complete diversity. (Doc. 55 at 8). The Court disagrees.

Section 1367(a) grants courts broad supplemental jurisdiction over other claims within the same case or controversy if they have original jurisdiction over the action. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). The Court has original jurisdiction under 28 U.S.C. § 1332 because (1) Wells Fargo is diverse from Prime1, Aguilar, the Shahs, and the Trust; and (2) the amount in controversy exceeds $75,000.

Masizo argues that Section 1367(b) prohibits a third-party claim against a new nondiverse party because it bars supplemental jurisdiction over claims by persons seeking to intervene as plaintiffs. (Doc. 55 at 7–9). However, Congress intended Section 1367(b) to "prevent *original* plaintiffs . . . from circumventing the requirements of diversity." *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006) (citations omitted) (emphasis in original). In other words, Section 1367(b) stops a nondiverse party from waiting to sue until a diverse party sues the defendant, and thereby evading the complete diversity requirement of Section 1332.

This provision does not apply to this case because the original plaintiff, Wells Fargo, does not assert any claim against Masizo. (*See* Doc. 1). Here, Section 1367(b) would prevent Wells Fargo (or another party joining or intervening as plaintiff) from circumventing the requirement of diversity and bringing a claim against a nondiverse third-party defendant. That is not the situation here. The Shahs are not the original plaintiffs. Thus, there is no requirement that they be diverse from Masizo. 28 U.S.C. § 1367.

/ / /

/ / /

### 4. The Third-Party Complaint Forms Part of the Same Claim or Controversy and does not Predominate Over the Original Claim

Masizo also claims that the Third-Party Complaint does not meet the requirements of 28 U.S.C. § 1367(a) because the allegations in the Third-Party Complaint do not "form part of the same case or controversy" as the original Complaint. (Doc. 55 at 10–12). If they do, Masizo further asserts that the Court should decline supplemental jurisdiction because of Section 1367(c)(2), which states that courts may decline supplemental jurisdiction if the claim "substantially predominates" over the original claim. 28 U.S.C. § 1367(c)(2).

A claim forms part of the same case or controversy when it shares a "common nucleus of operative fact" with the claim over which the court has original jurisdiction, and the claims would normally be tried together. *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). Similarly, one indication that a claim does not substantially predominate over the original claim is if it shares a common nucleus of operative fact. *Mincy v. Staff Leasing, L.P.*, 100 F.Supp.2d 1050, 1053 (D. Ariz. 2000). When deciding whether to exercise supplemental jurisdiction, courts are guided by the values of "economy, convenience, fairness and comity." *Bahrampour,* 356 F.3d at 978 (citing *Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557–58 (9th Cir. 1994)).

#### a. Common Nucleus of Operative Fact

Here, Masizo argues that, while the two matters are close in time, they are distinct and unrelated. (Doc. 55 at 10–12). It describes the Complaint as only about an alleged lie by the Shahs to Wells Fargo. (Doc. 64 at 5). It points out that any alleged fraud by Masizo against Shah and Jain could not have directly precipitated the Shah's alleged false fraud claim to Wells Fargo. (Doc. 55 at 11). It asserts that no alleged action of Masizo forced the Shahs into lying to Wells Fargo. (*Id.*)

Yet, the Complaint includes more than merely alleged fraud by the Shahs. Prime1 and Aguilar are also named as defendants. (Doc. 1). Wells Fargo has brought three Counts against Prime1 and Aguilar, and there are numerous factual allegations about their conduct

in the Complaint. (*See id.*). At its core, the Complaint is about funds in a check related to a contract between the Shahs and Prime1. (*See id.*). This same Contract describes Masizo as Prime1's partner and lists its Registrar of Contractors number. (Doc. 46-1). The Shahs also allege that an agent of Masizo admitted to them that it knowingly allowed Aguilar and Prime1 to operate under its license. (Doc. 46 at ¶ 22).

Accepting the allegations in the Third-Party Complaint as true, as the Court must, it finds that the claims do arise from a common nucleus of operative fact for supplemental jurisdiction purposes. They thus form part of the same case and controversy. *Bahrampour*, 356 F.3d at 978.

### b.     Economy, Convenience, and Fairness

Furthermore, the values of economy, convenience, and fairness support the Court's exercise of supplemental jurisdiction for two reasons. First, the claims arise from a common nucleus of operative fact, so the Third-Party Claims are unlikely to substantially predominate over the original claims. Second, the Claims in the TPC are derivative of and dependent on the outcome of the main claim. (*See* Doc. 60 at 11). That is, unless the Shahs are liable to Wells Fargo, they have no damages claim against Masizo. Economy and convenience weigh in favor of the Court exercising supplemental jurisdiction here. *Bahrampour,* 356 F.3d at 978.

### c.     Masizo's Liability to Wells Fargo

Masizo makes an additional argument that the Claims will predominate because Masizo "did nothing to make the Trust liable to [Wells Fargo]." (Doc. 64 at 5). Therefore, it claims, the Third Party Claims will confuse the issues and create a "side show" about the Contract that will distract from the claims in the Complaint. (*Id.* at 6).

It is true that the Shahs have not alleged that Masizo's conduct could have caused them to be liable to Wells Fargo. However, Rule 14 "does not require that the third-party defendant be liable to the original plaintiff" for a third-party claim to proceed. *Huggins v. Graves*, 337 F.2d 486, 489 (6th Cir. 1964); *see also Irwin v. Mascott*, 94 F.Supp.2d 1052, 1056 (N.D. Cal. 2000) (holding that Rule 14 "does not mean that the third-party defendant

must be liable to the original plaintiff."). Rather, the claim must be derivative of the main claim and dependent on its outcome. *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). Here, the Third-Party Claims are dependent on the outcome of the main claim. So, it is appropriate for the Court to exercise supplemental jurisdiction here. *Id.*

### B. The Rule 12(b)(6) Motion

#### 1. Breach of Contract against Masizo

To state a claim for breach of contract under Arizona law, the Third-Party Plaintiffs must allege the existence of the contract, its breach, and the resulting damages. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013); *see also Riverwalk Condo. Unit Owners Ass'n v. Travelers Indem. Co.*, 2018 WL 3774084, at *2 (D. Ariz. June 28, 2018). An enforceable contract requires "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (citation omitted).

The only remaining Third Party Plaintiffs are the Shahs in their capacity as trustees. *See supra* Section III.A. The Contract at issue is between the Shahs as individuals and Prime1 and Masizo. (Doc. 46-1 (referencing Masizo's Registrar of Contracts number and stating "[t]his Contract Agreement (this "Agreement") between Homeowner (Home Owner") [sic] and, Masizo & partner Prime1 Construction, LLC.")). The Shahs' only argument is that they have now assigned their claims to the Trust, but that assignment was improper. *Supra* Section III.A.2. No contract exists between the Third-Party Plaintiffs and Masizo; so, the Breach of Contract Claim cannot proceed. *Riverwalk Condo. Unit Owners Ass'n v. Travelers Indem. Co.*, 2018 WL 3774084, at *2.

#### 2. Unjust Enrichment

To state a claim for unjust enrichment, the Third-Party Plaintiffs must allege "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927,

936 (Ariz. Ct. App. 2011). "A claim for unjust enrichment may exist where a person confers a benefit to his detriment on another [where] allowing the other to retain that benefit would be unjust." *Baughman v. Roadrunner Commc'ns*, *LLC*, 2014 WL 3955262, at *4 (D. Ariz. Aug. 13, 2014) (citing *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579 (Ariz. Ct. App. 1986)). Under Arizona state law, "unjust enrichment is a flexible equitable remedy which is 'available whenever the court finds that the defendant . . . is obliged by the ties of natural justice and equity to make compensation for the benefits received.' " *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1097 (D. Ariz. 2021) (internal citations omitted). Under Rule 8(d)(2), a party "may plead an unjust enrichment claim in the alternative even if they are alleging the existence of a contract governing the dispute." *Id*.

Masizo argues that the Shahs have failed to make sufficient factual allegations of the first element, enrichment, because there are no specific allegations of how Masizo was enriched. (Doc. 55 at 13–14). However, the Shahs have alleged that "Prime1, Aguilar, and Masizo acted in concert with one another in a coordinated and deliberate conspiracy" (Doc. 46 at ¶ 38); that "Aguilar acted as an agent of Masizo" (*Id.* at ¶ 39); that "Prime1, Aguilar, and Masizo are alter egos of one another" (*Id.* at ¶ 41); and that a representative of Masizo told them that it knew Prime1 was using its license number (*Id.* at ¶¶ 30–31). In addition, the Contract contained numerous references to Masizo. (Doc. 46-1).

Masizo asserts that these statements are not supported by evidence and should be discounted as bald legal conclusions (Doc. 64 at 7-8), but the Court must accept the Shah's allegations as true when evaluating a motion to dismiss. The allegations that Aguilar was an agent of Masizo and that Masizo, Aguilar, and Prime1 are alter egos make it plausible that Masizo was enriched if Aguilar was enriched. *Baughman*, 2014 WL 3955262, at *4. Indeed, the Shahs allege that Aguilar was enriched when he withdrew the majority of the $125,000 from Prime1's account. (Doc. 46 at ¶ 35). This is sufficient to state a plausible claim for relief for unjust enrichment. *See Freeman*, 245 P.3d at 936.

/ / /

### 3. Fraud

To state a claim for fraud under Arizona law, the Third Party Plaintiffs must allege "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury." *Wells Fargo Credit Corp. v. Smith*, 803 P.2d 900, 905 (Ariz. Ct. App. 1990).

Masizo challenges the Fraud Claim on the grounds that (1) the Trust was not party to the Contract (Doc. 55 at 13), (2) Masizo lacked intent to induce the Shahs to allegedly lie to Wells Fargo (Doc. 64 at 8); (3) there is no nexus between the injury here and the original Complaint (Doc. 55 at 14), and (4) the Shahs have not suffered consequent and proximate injury. (*Id.*)

First, the formation of a contract is not one of the elements of fraud. *See Smith*, 803 P.2d at 905. More importantly, the Fraud Claim is not that the Shahs were fraudulently induced to form a contract, but that Masizo made a false material representation to the Shahs upon which they relied to decide to pay Prime1. (Doc. 46 at ¶ 49). Although the Trust was not a party to the Contract, the payment to Prime1 came from the Trust's account with Wells Fargo. (Doc. 1 at ¶ 22). Therefore, the Shahs, as trustees, have plausibly alleged that they relied on Masizo's allegedly false material representation. *See Smith*, 803 P.2d at 905 ("the listener's reliance on its truth").

Second, Masizo maintains that the Fraud Claim should be dismissed because Masizo did not intend to induce the Shahs to allegedly make a misrepresentation to Wells Fargo. (Doc. 64 at 8). But the element of intent in a Fraud Claim requires something else: Masizo must have intended that the Shahs "act[] upon" the representation it made to the Shahs. *See Dillon v. Zeneca Corp.*, 42 P.3d 598, 603 (Ariz. Ct. App. 2002) ("[F]raudulent misrepresentation requires a false misrepresentation made . . . with the intent that it be acted upon by the listener." (citation omitted)). Here, the Shahs have plausibly alleged that

Masizo knowingly allowed Prime1 to make contracts using its license number to seem legitimate. (Doc. 46 at ¶ 38). They have presented a factual basis for this allegation through the mentions of Masizo in the Contract (Doc. 46-1) and the alleged statements of Masizo's owner. (Doc. 46 at ¶¶ 30–31).

Third, Masizo contends that the Fraud Claim fails because there is no nexus between the consequent and proximate injury suffered here and the original Complaint. (Doc. 55 at 14–15). By this, it means that any alleged fraud by Masizo could not have directly caused the Shahs to be liable to Wells Fargo based on the facts of the original Complaint. However, as explained earlier, a third-party defendant need not be liable to the original plaintiff. *Supra* Section III.A. That is, a third-party claim does not require the third-party defendant's wrongdoing to be directly responsible for the original plaintiff's harm. *Bahrampour,* 356 F.3d at 978. So, the Shahs have no need to allege that the consequent and proximate injury here are the exact same as those in the original Complaint. *See id.*

Finally, Masizo believes that the Shahs have suffered no consequent and proximate injury because Wells Fargo allegedly reversed the payment from the Shahs to Prime1. (Doc. 55 at 14-15). But the Court must accept the Third-Party Plaintiff's allegations as true when evaluating a motion to dismiss. Here, the Shahs have plausibly alleged that they have suffered damages from paying $125,000 to Prime1 (Doc. 60 at 14) and they assert that Masizo's liability to the Trust is contingent on the Trust's liability to Wells Fargo. (Doc. 46 at ¶ 37). Thus, the Shahs have pled sufficient factual content to state a fraud claim that is plausible on its face. *Smith*, 803 P.2d at 905.

As such, the Shahs' remaining claims are the Fraud and Unjust Enrichment Claims.

**C.     Leave to Amend**

A court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) (citation omitted). Typically, a district court should not dismiss a complaint with

- 14 -

prejudice if an amendment could save the complaint. *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture C*o., 806 F.2d 1393, 1401 (9th Cir. 1986). In sum, leave to amend "is properly denied [where] amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Here, the Court dismisses only the Third-Party Plaintiffs' breach of contract claim and does not grant the Third-Party Plaintiffs leave to amend their Third-Party Complaint because the Trust was not party to the Contract, so any amendment would be futile. *See Carrico*, 656 F.3d at 1008.

Accordingly,

**IT IS ORDERED** that Third-Party Defendant Masizo's Motion to Dismiss (Doc. 55) is **GRANTED** in part and **DENIED** in part as follows:

- The claims for Breach of Contract, Unjust Enrichment, and Fraud brought by the Third-Party Plaintiffs Shahs in their individual capacities are **DISMISSED** with prejudice.
- The Breach of Contract claim brought by Third-Party Plaintiffs Shahs in their capacity as trustees of the Ankur & Ruchi Shah Family Trust is also **DISMISSED** with prejudice.
- The Motion to Dismiss is **DENIED** as to the Shahs' claims for Fraud and Unjust Enrichment in their capacity as trustees of the Ankur & Ruchi Shah Family Trust.

Dated this 16th day of June, 2025.

Honorable Diane J. Humetewa
United States District Judge