**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-24-02337-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Prime1 Construction LLC, et al., | |
| Defendants. | |

On March 7, 2025, Plaintiff Wells Fargo Bank NA ("Plaintiff") filed a Motion for Default Judgment against Defendants Prime1 Construction LLC and Phillip Aguilar (collectively, "Defendants"). (Doc. 56). The Motion is unopposed, and the time to file a response has passed. *See* LRCiv 7.2(c). Plaintiff has, likewise, filed an unopposed Application for Attorney Fees and Costs. (Doc. 57). The Court held a hearing on Plaintiff's Motions on January 29, 2026, and Plaintiff's counsel presented oral argument. Defendants did not attend the hearing.

With the oral argument and briefing in mind, the Court will now examine Plaintiff's Motion for Default Judgment, followed by Plaintiff's attorney fees request.

**I.   Background**

Defendant Phillip Aguilar ("Aguilar") is the owner of Defendant Prime1 Construction LLC ("Prime1"). (Doc. 1 at ¶ 3). On or around November 10, 2022, Prime1 opened an "Initiate Business Checking account" (the "Prime1 Account") with Plaintiff, and, in doing so, agreed to be bound by the terms of the Account Agreement. (*Id.* at ¶¶ 12–

13). Amongst other things, the Account Agreement states that "[i]f your account has an overdraft, you must promptly add money to return your account to a positive balance." (*Id.* at ¶ 37; Doc. 1-1 at 13).

In February of 2024, Prime1 and Defendant Ankur R. Shah ("Shah"), acting on behalf of the Defendant Ankur & Ruchi Shah Family Trust ("Defendant Trust"), entered into a construction contract for the completion of landscaping, pool installation, interior home renovations, and other agreed-upon projects. (Doc. 1 at ¶ 20). Before construction could begin, the construction contract required Shah to make an initial payment of $125,000.00, or half of the contract price, to Prime1. (*Id.* at ¶ 21).

Shah wrote the check and postdated it for February 12, 2024, to ensure that the necessary funds were available in the Trust's account. (*Id.* at ¶¶ 22, 25). On or before February 8, 2024, Defendant Aguilar picked up the check. (*Id.* at ¶ 25). He was notified by Shah on February 8, 2024, that the funds had settled. (*Id.* at ¶ 26). Shah then asked Aguilar if he would like to come pick up a new check. (*Id.*) Aguilar messaged back stating that instead of picking up a new check, he had changed the date on the check from February 12 to February 9. (*Id.* at ¶ 27). Shah ratified this alteration by liking the text notifying him of the change. (*Id.* at ¶ 28). Aguilar deposited the check into the Prime1 Account on February 9, 2024. (*Id.* at ¶ 27).

"In the days following Mr. Shah's ratification of Mr. Aguilar's alteration and deposit of the Check, Mr. Shah [] learned of certain facts that called into question the trustworthiness of Mr. Aguilar and Prime1 and whether Prime1 would complete the Project as agreed." (*Id.* at ¶ 29). Shah thereafter filed a fraud claim with Plaintiff on February 13, 2024, claiming that the check deposited into the Prime1 Account was fraudulently altered and the deposit was not authorized. (*Id.* at ¶¶ 30, 32, 36). Without knowledge of the prior ratification, Plaintiff acted on Shah's fraud claim and reversed the $125,000.00 check deposit on February 13, 2024. (*Id.* at ¶ 31). Plaintiff later "learned that Mr. Shah had ratified Mr. Aguilar's alteration and deposit of the Check, but subsequently filed the fraud claim related to the Check due to a contract dispute with Mr. Aguilar and Prime1." (*Id.* at

¶ 32).

Between February 9 and February 13, 2024, Defendants depleted the funds in the Prime1 Account through various online transfers. (*Id.* at ¶ 35). Consequently, when Plaintiff reversed the §125,000.00 deposit on February 13, 2024, it resulted in an $111,338.43 overdraft on the Prime1 Account; subsequent deposits by Defendant Prime1 brought the total amount overdrawn to $106,338.43. (*Id.* at ¶¶ 36, 40).

"Wells Fargo [] contacted both the Trustees and Prime1 to resolve the issues regarding Mr. Shah's fraud claim and Prime1's overdraft to recover the over $100,000 in losses that Wells Fargo has incurred." (*Id.* at ¶ 43). Because these attempts were unsuccessful, Plaintiff brought this case, alleging claims against the Defendant Trust or Defendants Prime1 and Aguilar. Defendants Aguilar and Prime1 failed to respond to or otherwise defend against this action and the Clerk entered default against them on January 22, 2025, and January 29, 2025, respectively. (Docs. 36, 41). Plaintiff now moves for the entry of default judgment on its claims against Defendants. Plaintiff specifically seeks $106,333.42 from Defendants, which it says "is the amount by which Prime1 and Mr. Aguilar have overdrawn Prime1's bank account with Wells Fargo." (Doc. 56 at 2). Since filing their Motion for Default Judgment, Plaintiff has settled with Defendant Trust. (*See* Doc. 85).

**II.    Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) governs applications for default judgment. The Court possesses discretion whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Before analyzing the merits of a motion for default judgment, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citing *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

If jurisdiction is established, the Court then considers:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the

> possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

### III.     Discussion

The Court will first assess whether it has subject matter jurisdiction over the case and personal jurisdiction over Defendants. The Court will then evaluate the merits of Plaintiff's Motion for Default Judgment under the *Eitel* factors.

#### A.     Jurisdiction

Federal courts have jurisdiction under 28 U.S.C. § 1332 when: (1) there is a complete diversity of citizenship among the parties, *i.e.*, no plaintiff is a citizen of the same state as any defendant; and (2) the amount in controversy exceeds $75,000.00. Plaintiff, a citizen of South Dakota, brings breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims for damages exceeding $75,000 against Defendants Prime1 and Phillip Aguilar, citizens of Arizona. (Doc. 1 at ¶¶ 2–5). It follows that the Court has subject matter jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

The Court must now determine whether it has personal jurisdiction over Defendant. "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." *Donell v. Keppers*, 835 F. Supp. 2d 871, 876 (S.D. Cal. 2011) (default-judgment case) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Plaintiff has established that Defendant Aguilar resides in Scottsdale, Arizona and that Defendant Prime1 has its principal offices also in Scottsdale, Arizona. (Doc. 1 at ¶¶ 2–4).

Therefore, the Court has personal jurisdiction over both Defendants.

### B.     Multiple Defendants

Rule 54(b) specifies that "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  The Ninth Circuit has recognized the rule that "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants."  *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 523 (9th Cir. 2001).

Here, Plaintiff brought breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud claims against Defendant Trust.  (*See* Doc. 1 at ¶¶ 47–70).  Then, Plaintiff states "[a]lternatively and/or in addition to, Wells Fargo seeks to hold Prime1 and Mr. Aguilar jointly and severally liable for the $106,338.43 in losses[.]"  (*Id.* at ¶ 46).  Therefore, as an alternative to their claims against Defendant Trust, Plaintiff brings breach of contract and breach of the implied covenant of good faith and fair dealing against Prime1 as well as an unjust enrichment claim against Prime1 and Aguilar, all citing F. R. Civ. P. 8(a)(3).  (*See id.* at ¶¶ 71–95).  Since filing their Motion for Default Judgment, Plaintiff has settled with Defendant Trust.  (*See* Doc. 85).

Due to Plaintiff alleging claims against Defendants under alternative liability theories, the Court issued an Order to Show Cause, instructing Plaintiff to "show cause as to its legal basis for acquiring a default judgment against alternative Defendants when it has settled its claims against its main Defendant, the Trust."  (Doc. 88 at 1).

Plaintiff responded to that Order on November 5, 2025.  (Doc. 89).  In its response, Plaintiff notes that the claims against Defendants were brought "alternatively to and/or in addition to its claims" against Defendant Trust.  (Id. at 2 (internal quotations omitted)).  It also cites authority to support the notion that its settlement with Defendant Trust does not preclude obtaining a default judgment against Defendants.  *See Meridian PO Fin. LLC v. OTR Tire Group Inc.*, 2023 WL 5348551, *6-11, 13 (D. Ariz. 2023); *Juarez v. Villafan*,

2017 WL 6629529, *4 (E.D. Cal. 2017).

None of the authorities cited in Plaintiff's Response, however, provides clear support for the proposition that default judgment may be properly issued against defendants on claims that are only pled in the alternative when a plaintiff has settled its primary claims with the other tortfeasor. Plaintiff's cited authority concerns default judgments sought against various defendants connected to the plaintiff's main theories of liability. *See*, *e.g.*, *Meridian*, 2023 WL 5348551 at *1–2 (seeking default judgment on various claims against the defendants all connected to their participation in a "scheme" to defraud the plaintiff); *Juarez*, 2017 WL 6629529 at *6–12 (seeking default judgment on wage claims brought against joint employer defendants). These cases are not analogous to the current situation where default judgment is sought against defendants only implicated by claims pled in the alternative.

Counsel was unable to provide any additional case law on this point during the January 29 hearing either. Instead, Plaintiff maintained that both Defendant Trust and Defendants were independently liable under separate contracts, and therefore, the claims against Defendants are not necessarily "alternative." (*Id.*) However, this argument appears incongruous with the Complaint. (*See*, *e.g.*, Doc. 1 at ¶ 72 ("As an alternative to Count One, Two and Three, Wells Fargo asserts this breach of contract claim.")).

The Court maintains serious skepticism as to the propriety of a default judgment in these circumstances. At the same time, no authority located forecloses entering default judgment in these circumstances, so the Court will examine the merits of Plaintiff's Motion.

### C.    *Eitel* Factors

Having found jurisdiction, the Court will assess the *Eitel* factors to determine the merits of Plaintiff's Motion for Default Judgment. The Court will begin with the second and third factors before assessing the remaining considerations.

#### 1. Merits of Plaintiff's Claim and Sufficiency of the Complaint

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the

sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). The second and third *Eitel* factors favor default judgment when the complaint sufficiently states a claim for relief upon which the plaintiff may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978); *Pepsico, Inc.*, 238 F. Supp. 2d at 1175. "Upon entry of default, the facts alleged to establish liability are binding upon the defaulting party." *Danning*, 572 F.2d at 1388. "However, it follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Id*.

To recover the overdrawn balance on the Prime1 Account, Plaintiff brings breach of contract and the implied covenant of good faith and fair dealing claims against Prime1 and an unjust enrichment claim against Defendants. The Court will examine each claim in turn.

### i. Breach of Contract Claim

To prevail on a breach of contract claim under Arizona law, "a plaintiff must show a contract, a breach of contract, and damages." *Best W. Int'l, Inc. v. Patel*, 523 F. Supp. 2d 979, 988 (D. Ariz. 2007) (*citing Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)). Importantly, the damages must be resultant of the alleged breach. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. App. 2004); *Consol. Enterprises, Inc. v. Schwindt*, 833 P.2d 706, 711–12 (Ariz. 1992) (Corcoran, J., dissenting) ("[P]rovided it shows the usual requisites for breach of contract claim, i.e., the existence of a contract, the breach of that contract, and damages flowing from the breach.").

Here, Plaintiff alleges that Prime1 opened an "Initiate Business Checking account with Wells Fargo," and, in doing so, it agreed to be bound by the terms of the Account Agreement. (Doc. 1 at 12–13). The Agreement includes a provision stating that "[i]f your account has an overdraft, you must promptly add money to return your account to a positive balance." (*Id.* at ¶ 37 (internal quotation marks omitted); Doc. 1-1 at 13). Plaintiff alleges that Prime1 breached the Agreement by failing to bring the Prime1 Account to a positive

1 balance after it was overdrawn. (Doc. 1 at ¶ 76). Plaintiff further alleges that this breach caused it damage in the amount overdrawn. (*Id.* at ¶ 77). Upon review of the entire Complaint, however, the facts alleged for a breach of contract against Prime1 do not establish that Prime1's failure "to return [its] account to a positive balance" was the event that caused Plaintiff's damages.

The circumstances here are not a straightforward scenario where an individual or business spent more money than was available in its account and sent their account into overdraft status. The Complaint's allegations, taken as true, establish that the overdraft was caused when Defendant Shah, on behalf of the Trust, fraudulently informed Plaintiff to reverse a check the Trust had deposited in the Prime1 Account. (*Id.* at ¶ 36 ("On or about February 13, 2024, Mr. Shah filed his fraudulent claim with Wells Fargo, resulting in a reversal of the Check and an overdraft on the Prime1 Account in the amount of $111,338.43.")). Plaintiff, without further investigation, "believed Mr. Shah's fraud claim was valid and reversed the $125,000 charge made to" Defendant Prime1's Account. (*Id.* ¶ 31). In other words, Plaintiff's allegations show only that *it* caused the overdraft when, relying on Defendant Shah's fraudulent statement, *it* reversed the deposit and caused the account to go into a deficit.

Plaintiff alleges that "[d]ue to Mr. Shah's fraudulently filed chargeback claim, and Prime1's depletion of the funds within the Prime1 Account, Wells Fargo has suffered a loss in excess of $100,000." (*Id.* at ¶ 42). However, Plaintiff does not allege that Defendant Prime1 wrongfully withdrew the funds deposited into its account before Plaintiff reversed the charge on Shah's word. Per the Complaint, the check was validly deposited into the Prime1 Account, and therefore the transfer of available funds out of the Account cannot be seen as a breach of the Agreement (nor is such alleged in the Complaint).

During oral argument, counsel posited that Prime1 had an obligation to bring the account to balance even when Plaintiff, itself, is the cause of the Account overdraft. But counsel did not cite to a portion of the Account Agreement that so obligated Prime1. The only contractual provision that has been identified to the Court states "[i]f your account has

an overdraft, you must promptly add money to return your account to a positive balance." (Doc. 1-1 at 13). Were the Court to accept Plaintiff's interpretation of this provision, then Wells Fargo could presumably withdraw account funds for any reason, cause an overdraft, and obligate the owner to bring the account to balance. The Court rejects this notion.

What Plaintiff's Complaint most accurately describes is circumstances where Plaintiff has claims against Defendant Trust and Defendant Trust has claims against Defendants Prime1 and Aguilar under their construction contract.[1] In all, because the Complaint's allegations are deemed true upon default, Plaintiff has not pled a valid breach of contract claim against Prime1. *See Geddes*, 559 F.2d at 560 (stating that allegations in the complaint, unrelated to damages, are taken as true upon default).

### ii. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Arizona law "implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* Plaintiff alleges that the Account Agreement, as a valid contract, carries an implied covenant of good faith and fair dealing. (Doc. 1 at ¶¶ 82–83). Prime1 breached this duty "by, among other things, failing to maintain a positive balance in the Prime1 Account," which resulted in Plaintiff's damages. (*Id.* at ¶¶ 84–85). However, as stated above, when Prime1 was moving money out of its account, the funds to do so were present in the Prime1 Account. (*Id.* at ¶¶ 34–36). Because the Prime1 Account only went into overdraft as a result of Plaintiff's action, it cannot be said that Prime1 acted to impair Plaintiff's ability to receive the benefits of the Agreement. Even taking the Complaint's allegations as true, Plaintiff has insufficiently pled that Defendant Prime1 breached the implied covenant of good faith and fair dealing.

### iii. Unjust Enrichment Claim

Under Arizona law, unjust enrichment claims require proof of five elements: (1) an

---

[1] Indeed, Defendant Trust filed cross claims against Prime1 and Aguilar and recently moved for default judgment on those claims. (*See* Doc. 92).

- 9 -

enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011). Put differently, "a plaintiff must demonstrate that the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should provide compensation." *Id.* Plaintiff brings its unjust enrichment claim against both Defendant Prime1 and Aguilar. In support of its claim, Plaintiff states that it conferred the benefit of the overdrawn amount in the Prime1 Account to Prime1 and Aguilar, which they accepted and retained. (Doc. 1 at ¶¶ 89–90). Plaintiff further states that Defendants' unjust enrichment is to its detriment, such that Defendants' retention of the overdrawn amount is inequitable. (*Id.* at ¶¶ 91–93).

Nonetheless, Plaintiff's unjust enrichment claim fails to account for the alleged circumstances surrounding the overdraft. Based on Plaintiff's Complaint, there is a justification for the enrichment and impoverishment—a fraudulent claim that caused Plaintiff to reverse the funds in the Prime1 Account. (*See id.* at ¶ 36). At the hearing, Plaintiff's counsel emphasized that Prime1 withdrew the deposited funds after the $125,000.00 check was deposited. But neither the Complaint nor counsel state that Prime1's withdrawal of the funds was inequitable or that it improperly spent funds that were in the account. At its own risk, Plaintiff chose to reverse the $125,000.00 deposit four days after the deposit was made, and prior to completing an investigation on the fraud claim made by Defendant Shah. In doing so, Plaintiff caused Prime1's account to go into overdraft. The allegations in Plaintiff's Complaint show that Plaintiff thereafter learned that Defendant Shah's fraud claim was itself fraudulent. Thus, Plaintiff's own allegations show that a justification exists for Prime1's refusal to bring its account to balance: namely, *Plaintiff* and not Prime1 caused the account to go into overdraft. Notably, unjust enrichment also requires an absence of a remedy provided by law. Here, Plaintiff plainly has legal remedies available against Defendant Trust. Plaintiff has not demonstrated

circumstances where Defendants, in good conscience, should provide compensation to Plaintiff and, consequently, fail to establish an unjust enrichment claim.

Overall, the Court has serious reservations about the merits of Plaintiff's claims against Defendants based upon the Complaint. *Cripps v. Life Ins. Co. of N.A.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."). Because the claims Plaintiff seeks default judgment on have not been adequately established, default judgment cannot be entered. *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."); *Bailey v. HVSN Enterprises Inc*, 2021 WL 794501, *2 (C.D. Cal. 2021) ("The second and third *Eitel* factors alone demonstrate that default judgment is improper, and the Court need not assess the remaining factors.").

### D.  Motion for Attorney Fees and Costs

Plaintiff's Application for Attorney Fees and Costs (Doc. 57) is premised upon its Agreement with Defendant Prime1 that entitles it to collect attorney fees and costs incurred from Plaintiff's collection efforts. (*Id.* at 5). The Prime1 Account states that "[Plaintiff] may report you to consumer reporting agencies and initiate collection efforts. [Prime1] agree[s] to reimburse us for the costs and expenses (including attorneys' fees and expenses) [Plaintiff] incur[s] to do so." (Doc. 1-1 at 13).

"A contractual provision for attorneys' fees will be enforced according to its terms." *Chase Bank of Arizona v. Acosta*, 880 P.2d 1109, 1121 (Ariz. App. 1994). Unlike fees awarded under A.R.S. § 12-341.01(A), awarding fees under a valid contractual provision is not discretionary. *Id.* However, in all of the Plaintiff's cited authority, the party seeking attorney fees prevailed in its efforts to enforce the relevant contract. *See id.* ("In the judgment, the court found that the bank incurred attorneys' fees in the superior court in the amount of $84,174."); *Heritage Heights Home Owners Ass'n v. Esser*, 565 P.2d 207, 210-11 (Ariz. App. 1977) ("Having found the restriction valid and having required its enforcement, the trial court was obliged by the contract to assess attorneys' fees and costs

in favor of the enforcing party."); *Bennett v. Appaloosa Horse Club*, 35 P.3d 426, 432 (Ariz. App. 2001) ("ApHC requests an award of its attorneys' fees on appeal pursuant to both A.R.S. § 12–341.01(A), as the prevailing party in an action arising out of contract, and the applicable provision of the parties' membership agreement, which directs a fee award to ApHC if it prevails in any litigation with a member."). The Court has not found that Plaintiff has established a valid breach of contract claim.

Although the Agreement here does not specifically require Plaintiff to be the prevailing party, Arizona courts have declined to award non-prevailing parties their attorney fees notwithstanding similar, unilateral fee provisions. In *ZB, N.A. v. Hoeller*, 395 P.3d 704 (Ariz. App. 2017), the lender plaintiff's promissory note included "a fee provision which provided for the award of [the plaintiff's] expenses, including attorneys' fees, to collect on the note if Borrowers did not pay." *Id.* at 706. Both the lender and borrowers requested attorney fees, but the borrowers were ultimately the prevailing party. *Id*. The court concluded that "[b]ecause Borrowers are the successful party in a contested action arising out of the promissory note—a contract—we grant Borrowers their reasonable attorneys' fees under A.R.S. § 12–341.01…and deny fees and costs to [plaintiff]." *Id.* at 709; *see also Zounds Hearing Franchising, LLC v. Bower*, 2017 WL 4399487, *11-12 (D. Ariz. 2017). Thus, because Plaintiff was unsuccessful in its contract claim, an award of fees and costs is not appropriate.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 56) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Application for Attorney Fees and Costs (Doc. 57) is **DENIED**.

Dated this 30th day of January, 2026.

Honorable Diane J. Humetewa
United States District Judge