WO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-24-02337-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Prime1 Construction LLC, et al., | |
| Defendants. | |

On November 24, 2025, Cross-Claimants Ankur R. Shah ("Shah") and Ruchi Jain ("Jain") (collectively, "Cross-Claimants"), in their capacities as trustees of the Ankur & Ruchi Shah Family Trust (the "Trust"), filed a Motion for Default Judgment against Defendants Prime1 Construction LLC ("Prime1") and Phillip Aguilar[1] ("Aguilar") (collectively, "Defendants"). (Doc. 92). Defendants have not appeared or otherwise defended against this action. Consequently, the Motion is unopposed, and the time to file a response has passed. *See* LRCiv 7.2(c).

## I.    Background

This case presents a rather convoluted set of circumstances. It was initially instigated by Plaintiff Wells Fargo ("Wells Fargo"), on September 5, 2024, over a dispute with a $125,000.00 check that resulted in an overdrawn account. (*See generally* Doc. 1). As relevant here, both the Trust and Prime1 had accounts with Wells Fargo that were involved with the disputed check and overdraw. (Doc. 1 at ¶¶ 11–12). Wells Fargo filed

---

[1] Cross-Claimants state that Aguilar also went by the name "Jordan Rodriguez." (Doc. 46 at ¶ 4). Any mention of the name "Rodriguez" refers to the same person as "Aguilar."

breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud claims against the Trust. (*Id.* at ¶¶ 47–70). And, in the alternative, Wells Fargo brought breach of contract and breach of the implied covenant of good faith and fair dealing claims against Prime1 as well as an unjust enrichment claim against both Defendants. (*Id.* at ¶¶ 71–95). Both Aguilar and Prime1 failed to answer or defend against Wells Fargo's Complaint, and the Clerk consequently entered default against each. (*See* Docs. 18, 36).

Following the receipt of Wells Fargo's Complaint, Cross-Claimants filed a Second Amended Answer and Cross Claim/Third Party Complaint (the "Cross Complaint"). (Doc. 46). In the Cross Complaint, Cross-Claimants allege claims against Defendants due to a construction contract (the "Contract") between the parties. They additionally brought suit against Masizo Development, LLC ("Masizo"), another party identified in the Contract. (*See id.* at ¶¶ 5, 22).[2]

Cross-Claimants allege that, in February of 2024, they were seeking a licensed contractor to complete a home improvement project on their house. (*Id.* at ¶ 9). At the urging of their designer, Cross-Claimants selected Aguilar, who is the owner of Prime1, to complete the project. (*See id.* at ¶¶ 4, 9–15). Aguilar and the designer agreed to complete the project for $250,000.00, and sent Cross-Claimants the Contract, which they signed on or around February 8, 2024. (*Id.* at ¶¶ 15–16).

To commence construction work, Cross-Claimants paid Aguilar $125,000.00. (*Id.* at ¶ 17). However, "[s]ubsequent to signing the Contract, and prior to the commencement of work, Shah and Jain quickly uncovered significant red flags indicative of deliberate fraud, including Aguilar's use of false names (such as Jordan Rodriguez), erratic and evasive communication, and alarming online reviews directly accusing Aguilar and Prime1 of prior fraudulent activities." (*Id.* at ¶ 18). It further came to light that Prime1 was not a licensed contractor with the Arizona Registrar of Contractors at any relevant time. (*Id.* at ¶ 20). Cross-Claimants allege that "Aguilar deliberately induced Shah and Jain to

---

[2] Throughout this Order, cited paragraph numbers from docket entry 46 refer to the paragraph number in the Cross Complaint, not the Second Amended Answer, unless otherwise stated.

sign a fraudulent and misleading contract for labor and materials purportedly estimated at $250,000, knowing that Prime1 was unlicensed and incapable of lawfully fulfilling the Contract[.]" (*Id.* at ¶ 21).

"On February 10, 2024, [Wells Fargo] contacted Jain about the $125,000 check." (*Id.* at ¶ 24). Jain directed Wells Fargo to dishonor the check, and Wells Fargo initially complied with this directive. (*Id.* at ¶¶ 25, 28). The parties then agreed to terminate the Contract on February 13, 2024. (*Id.* at ¶ 32). Meanwhile, "Wells Fargo subsequently, inexplicably, without authority, and without further communicating with Shah or Jain, reversed its dishonor of the check and credited Prime1's account." (*Id.* at ¶ 34). And "Aguilar surreptitiously withdrew the majority of the funds from Prime1's Wells Fargo account and absconded with the stolen money." (*Id.* at ¶ 35).

As a result, Cross-Claimants brought the following claims: breach of contract against Prime1 and Masizo; unjust enrichment against Prime1, Aguilar, and Masizo; and fraud against Aguilar and Masizo. (*Id.* at ¶¶ 44–52). Masizo appeared and participated in this matter. (*See*, *e.g.*, Doc. 55). Cross-Claimants served Prime1 (Doc. 31), and after unsuccessful attempts to serve Aguilar, they were permitted to execute service on Aguilar by alternative means. (*See* Doc. 54). Alternative service was completed on February 27, 2025. (*See* Doc. 58). Nonetheless, Aguilar and Prime1 both failed to appear in this matter, and default was again entered for each party. (Docs. 41, 62).

On August 14, 2025, Wells Fargo, the Trust, and Masizo participated in a settlement conference with Magistrate Judge Lynette C. Kimmins, and a subsequent conference was held on September 18, 2025. (*See* Docs. 78, 85). The second conference proved successful as the parties were able to reach a settlement. (*See* Doc. 85). "Pursuant to the agreement reached among the parties in the settlement conference, the Trust agreed to pay $65,000.00 to Wells Fargo to settle Wells Fargo's claims against the Trust." (Doc. 92 at 12).

Cross-Claimants now seek default judgment against Defendants for their claims raised in the Cross Complaint. (*See generally id.*).

/ / /

- 3 -

## II.    Legal Standard

Federal Rule of Civil Procedure 55(b)(2) governs applications for default judgment. The Court possesses discretion whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Before analyzing the merits of a motion for default judgment, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citing *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

If jurisdiction is established, the Court then considers:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

## III.    Discussion

Cross-Claimants are seeking default judgment on their unjust enrichment claim brought against Defendants as well as their fraud claim brought against Aguilar.[3]  They are seeking to recover $65,000.00 from Defendants, "the exact amount that the Trust paid to settle Wells Fargo's claims." (Doc. 92 at 6).  In other words, Cross-Claimants seek to have Defendants indemnify them for the damages—i.e., the $65,000.00 paid to settle Wells Fargo's claims against them—they say they incurred as a result of Defendants' conduct.

---

[3] Cross-Claimants also brought a breach of contract claim against Prime1 in their Complaint.  However, this claim is not addressed in their Motion for Default Judgment. (*See* Doc. 92 at 5–6).  As Cross-Claimants do not request default judgment on this claim or otherwise seek damages regarding this claim, the Court considers it abandoned.  *See*, *e.g.*, *J & J Sports Productions, Inc. v. Banuelos*, 2013 WL 1283344, at *3 n.3 (N.D. Cal. 2013) (treating a claim not addressed in the plaintiff's motion for default was abandoned); *Kaloustian v. FarMar Law Group, PC*, 2022 WL 18397630, at *6 n.2 (C.D. Cal. 2022) (same).

This is problematic in the context of default judgment because neither of Cross-Claimants' causes of action establish that Defendants are liable to indemnify Cross-Claimants for said settlement. *See Great Bowery, Inc. v. FouFou LLC*, 2026 WL 1730861, at *2 (C.D. Cal. 2026) ("Because Plaintiff has not shown that it is entitled to the relief it seeks, its motion for default judgment is denied.").

"Arizona's equitable indemnity law seeks to avoid unjust enrichment by allowing recovery only when an indemnity plaintiff subject to derivative or imputed liability discharges an actual obligation that a culpable indemnity defendant owed to a third party." *KnightBrook Ins. Co. v. Payless Car Rental Sys. Inc.*, 409 P.3d 293, 295 (Ariz. 2018). Under Arizona law, "the plaintiff in a common law indemnity action generally must show: (1) it discharged a legal obligation owed to a third party; (2) for which the indemnity defendant was also liable; and (3) as between the two, the obligation should have been discharged by the [indemnity] defendant." *Id.* (internal quotation mark and citations omitted). Cross-Claimants brought no such claim here.

Instead, Cross-Claimants' fraud claim is premised upon Aguilar's representations and omissions about Defendants' legal ability to perform the contract and status as a licensed contractor. (*See* Doc. 46 at 14). Not only is Cross-Claimants' settlement unrelated to their fraud claim, but also the above elements are not present. So, this claim provides no basis for the Court to hold Defendants liable for Cross-Claimants' settlement with Wells Fargo.

Similarly, as to Cross-Claimants' unjust enrichment claim, while the elements of such a claim maybe ascertainable from the Cross Complaint in its entirety, the claim merely asserts: "[b]y and through the acts and omissions of Prime1, Aguilar, and Masizo as alleged in this Complaint, Prime1, Aguilar, and Masizo have been unjustly enriched and the Shahs have been unjustly impoverished; and as such, the Shahs are entitled to equitable damages in an amount to be proven at trial." (*Id.* at 13). Consequently, the exact enrichment and impoverishment that Cross-Claimants are referencing is not abundantly clear. To be sure, Cross-Claimants allege that "[i]n Wells Fargo's Complaint, it asserts certain civil claims

against the Trust, Prime1, and Aguilar." (*Id.* at 12). And "[w]hile the Trust denies liability to Wells Fargo, if the Trust is found to be liable to Wells Fargo, then Prime1, Aguilar, and Masizo must be found liable to the Shahs." (*Id.*) Moreover, the Motion now states that "[t]he Trust has been impoverished in the amount of which Wells Fargo held the Trust liable for the missing funds." (Doc. 92 at 5). Nevertheless, these allegations and assertions are insufficient to hold Defendants liable for Cross-Claimants' settlement.

First, Cross-Claimants fail to allege the elements of an equitable indemnity claim described above. Second, to establish unjust enrichment, "a plaintiff must demonstrate that the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should provide compensation." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011). Cross-Claimants have not established in their Complaint how their settlement with Wells Fargo conferred a benefit on Defendants, especially where, as here, Wells Fargo's claims against Defendants were plead as alternative claims to its claims brought against Cross-Claimants. (*See* Doc. 1 at ¶¶ 72, 80, 88). By Cross-Claimants' own assessment, "the Trust agreed to pay $65,000.00 to Wells Fargo *to settle Wells Fargo's claims against the Trust*." (Doc. 92 at 12 (emphasis added)). No benefit to Defendants can be reasonably construed from Cross-Claimants' settlement. Therefore, Cross-Claimants' unjust enrichment claim is legally insufficient to obtain their settlement payment from Defendants.

In actuality, the damages ascertainable from the Cross Complaint stem from the $125,000.00 check that Aguilar is alleged to have absconded with. (*See* Doc. 46 at 12). Nonetheless, no damages regarding this check have been established with any amount of certainty that would warrant the entry of default judgment. The Court is in receipt of two conflicting recounts of the underlying events that transpired. *See Escalante v. Lidge*, 34 F.4th 486, 494–95 (5th Cir. 2022) (rejecting the argument that factual allegations in competing default judgment motions should be viewed in isolation because the court was "aware of no authority requiring courts adjudicating default judgments willfully to blind

themselves to pleadings of other parties in the same action"). In particular, Wells Fargo claims that "Shah filed a fraud claim with Wells Fargo, claiming that the Check was fraudulently altered and that he had not authorized Prime1 to deposit the Check," and "[a]s a result of Mr. Shah's fraudulently filed fraud claim, Wells Fargo has lost the $125,000 amount that was returned to the Trust Account." (*Id.*) At the same time, Cross-Claimants allege that initially "Wells Fargo had dishonored their $125,000 check," but "Wells Fargo subsequently, inexplicably, without authority, and without further communicating with Shah or Jain, reversed its dishonor of the check and credited Prime1's account," which Aguilar then illicitly took. (Doc. 46 at ¶¶ 32, 34–35). Additionally, Shah's declaration attached to the Motion only establishes that Shah instructed Wells Fargo to dishonor the check and that "Wells Fargo informed me that the funds would not be released to Prime1." (Doc. 92 at 11). Given the lack of clarity about the ultimate whereabouts of the check's funds, Cross-Claimants have, likewise, not established any damages relating to the $125,000.00 check.

While the Court is sympathetic to Cross-Claimants' difficulties with a seemingly duplicitous and absent contractor, this does not negate the showing that must be made to warrant default judgment. Entry of such a judgment is not a matter of right. *Doe v. Qi*, 349 F. Supp. 2d 1258, 1271 (N.D. Cal. 2004). "Its entry is entirely within the court's discretion and may be refused where the court determines no justifiable claim has been alleged or that a default judgment is inappropriate for other reasons." *Eason v. Indymac Bank, FSB*, 2010 WL 1962309, at *1 (D. Ariz. 2010). Because the allegations in the Cross Complaint are legally insufficient to establish entitlement to their claimed damages, the Court finds that entry of default judgment is inappropriate. *One World Apparel, LLC v. Unity Wear, LLC*, 2010 WL 11597809, at *3 (C.D. Cal. 2010) ("[T]he Court cannot grant the default judgment requested by Plaintiff because the allegations of the Complaint, even if accepted as true, do not establish a claim for the requested relief.")

Accordingly,

**IT IS ORDERED** that Cross-Claimants' Motion for Entry of Default Judgment

(Doc. 92) is **DENIED**.

**IT IS FURTHER ORDERED** that, unless the Court receives further filings from any active party **within fourteen (14) days of this Order**, this matter will be considered concluded, and the Clerk of Court will terminate this matter without further notice.

Dated this 30th day of July, 2026.

Honorable Diane J. Humetewa
United States District Judge